ETHEL S. BENTLEY, APPELLEE, V. HENRY V. HOAGLAND,
SHERIFF, APPELLANT.

FILED OCTOBER 17, 1913.    No. 17,332.

Appeal: VERDICT: EVIDENCE. Where the verdict of a jury is clearly
    against the weight and reasonableness of the evidence, it will be
    set aside and a new trial granted.

APPEAL from the district court for Lancaster county:
WILLARD E. STEWART, JUDGE. *Reversed.*

*Burr, Greene & Greene,* for appellant.

*George A. Adams* and *B. F. Johnson,* contra.

LETTON, J.

Plaintiff is the wife of William A. Bentley. A former
wife, Christena Bentley, had been divorced from Bentley,
and had recovered a judgment for alimony in the sum of
about $2,000 which was unsatisfied. Plaintiff and Bent-
ley had some differences, and plaintiff left his home and
went to Kansas City. While there she received a letter
from L. C. Burr, attorney for the former wife, asking her
assistance in the collection of the judgment for alimony,
and offering to pay a commission on any money collected
on the judgment by her assistance. She came to Lincoln,
and, according to the testimony of Mr. Burr and two
other witnesses, she stated that the automobile, the owner-
ship of which is in controversy in this action, belonged to
Bentley, though she had furnished part of the money to
pay for it, and she entered into a written instrument, the
purport of which was a recital that Mrs. Christena Bent-
ley was about to issue an execution against Bentley, a
statement by her as to Bentley's ownership of the ma-
chine, and an agreement that Christena would levy on
the automobile, a fur coat, a piano and a sewing machine,
and that she (Christena) would bid in the piano and
sewing machine at the sale and turn them over to the

plaintiff herein, and pay her expenses from Kansas City; the plaintiff also waived any right to the property levied on and granted the same to Christena. A levy was made upon the automobile, plaintiff pointing out and assisting the deputy sheriff in so doing. Afterwards she became reconciled to Bentley and began this action to recover the automobile. The property was taken under the writ, but no bond was given, and it was returned to defendant. The action then proceeded as one for damages under section 193 of the code.

The testimony of the plaintiff was, in substance, that she furnished the money to buy the machine, borrowing part of it from a bank, and that it was her property. She further testified that the paper introduced in evidence bearing her signature, which disavowed ownership, was not signed by her intentionally; that there were two pages of the document; and that Mr. Burr without her knowledge substituted the page she signed for another of entirely different purport. She denied that she pointed out the automobile to the officer or that she stated to him that it belonged to Bentley. Her mother and a sister gave testimony tending to support her in some matters. On the other hand, this testimony as to the occurrence in the law office is contradicted by a number of witnesses, and the deputy sheriff and Mr. Marlay both testify that she pointed out the machine. The sheriff also states that she said to him, after the levy, that the property levied upon belonged to Bentley. The jury evidently believed her version of the transactions.

A majority of my associates think the judgment should be reversed on the ground that the verdict is clearly against the weight and reasonableness of the evidence, and I defer with hesitation to their views. Their reasoning is as follows: "It is unreasonable to think that the sheriff's office would have levied upon this property under the circumstances testified to by plaintiff and her witnesses. Sheriff Hoagland himself testified that he knew the parties and wanted to be careful in the levying; that

he asked Mrs. Bentley (plaintiff) to whom the property levied on by Mr. Zellars belonged, and she said it belonged to Bentley. The plaintiff told him that Burr & Marlay were willing that she should use the machine, but he told her he would not consent to that; that in the same conversation she stated to him that Bentley deposited the money in the bank in her name and she drew her check for it, but that it was Bentley's money and the machine belonged to him; that he believed and relied upon the representations made by her and would not otherwise have proceeded with the levy and sale.

"It is significant that plaintiff talks all the time about money which she had in the bank, but nowhere in either abstract is it shown how she ever obtained any of the money, except the one statement in her own abstract 'that before that time she worked at the detective business in Mr. Bentley's office and got half the income.' The testimony of Sheriff Hoagland is that she told him, the day after the levy was made, 'that Bentley deposited the money in the bank in her name and she drew her check for it, but it was Bentley's money, and the machine belonged to him.' She denies that she told Sheriff Hoagland that the machine belonged to Bentley, but she does not deny telling him that the money deposited in her name was Bentley's money.

"There is another theory upon which the judgment in this case should be reversed. Conceding that the testimony might be sufficient to take the case to the jury if the action were one against Burr & Marlay for fraud in obtaining the execution of the agreement set out in the abstract, it does not follow that that evidence is sufficient to take the case to the jury in this action against the sheriff for an unlawful levy upon and sale of her property as that of her husband. This is an action against the sheriff alone for damages by reason of the unlawful taking and retention of her property. The defense pleaded by the sheriff is estoppel, the grounds upon which the estoppel is based being that she directed the officer to

State v. Houston.

levy upon the automobile, at the time stating that it was Bentley's property. Upon this point plaintiff's testimony denying these allegations stands alone, entirely uncorroborated, while against it is the testimony of the deputy sheriff, Zellars, that she did give such direction and make such statement, corroborated by Mr. Marlay, who was present at the time, and further corroborated by Sheriff Hoagland himself, who testified that on the next day she told him the same thing. The question, then, so far as this action is concerned, is: Can we permit a verdict of a jury to stand upon the uncorroborated testimony of this plaintiff as against the sheriff and his deputy and a reputable attorney, Mr. Marlay, who testified positively and unequivocally upon that point?"

There is much weight in this argument. The judgment of the district court is therefore

REVERSED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.